**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No:

YOLANDA RIOS, *an individual,*

    Plaintiff,

v.

NEXION HEALTH AT CHERRY CREEK, *a Delaware Corporation*, d/b/a CHERRY CREEK NURSING CENTER,

    Defendant.

---

## COMPLAINT AND JURY DEMAND

Plaintiff, Yolanda Rios, by and through her counsel of record, hereby brings the following Complaint for damages against Defendant Cherry Creek Nursing Center. Plaintiff states as follows:

## PARTIES

1. Plaintiff, Yolanda Rios, is a resident of Arapahoe County, State of Colorado.

2. Defendant, Nexion Health at Cherry Creek, Inc., d/b/a Cherry Creek Nursing Center, (hereinafter "CCNC or Defendant"), is a foreign corporation organized under the laws of the state of Delaware, with its principal place of business in the State of Maryland, and registered to do business in the State of Colorado, and regularly conducting business under its registered trade name Cherry Creek Nursing Center, with facilities located in Arapahoe County, State of Colorado.

3. At all relevant times, Defendant was and employer within the meaning of 42 U.S.C.A. §2000e, and was engaged in an industry affecting commerce, and employed more than fifteen (15) employees for each working day during the preceding calendar year.

## JURISDICTION & VENUE

4. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e and the C.R.S. §24-34-401 *et seq*.

1

5. Jurisdiction is invoked pursuant to 42 U.S.C.A. §2000e-5(f), 28 U.S.C.A. §§ 1343(a)(3), and pursuant to 28 U.S.C.A. §1367.

6. Costs and attorney fees may be awarded pursuant to 42 U.S.C.A. §2000e-5(k) and C.R.S. §24-34-405(5).

7. Venue properly lies in the District of Colorado pursuant to 42 U.S.C.A. §1391(b) and 42 U.S.C.A. §2000e-5(f)(3) because the unlawful employment practices complained of herein occurred within this judicial district.

## CONDITIONS PRECEDENT

8. Plaintiff has fulfilled all conditions precedent to the institution of this action under 42 U.S.C.A. §2000e. A Notice of Right to Sue was issued by the Equal Employment Opportunity Commission on October 5, 2017.

9. Plaintiff has fulfilled all conditions precedent to the institution of this action under C.R.S. § 24-34-306. A Notice of Right to Sue was issued by the Colorado Civil Rights Division On October 5, 2017.

10. Plaintiff has filed this cause of action less than ninety (90) days after the issuance of the right to sue by both the Equal Employment Opportunity Commission and the Colorado Civil Rights Division.

## FACTS COMMON TO ALL CLAIMS

11. Plaintiff, Yolanda Rios, began her employment as a Registered Nurse at Defendant Cherry Creek Nursing Center (hereinafter, "CCNC" or "Defendant"), located at 14699 E. Hampden Blvd., Aurora, Colorado 80014 in June of 2015.

12. At the time of her initial interview, Ms. Rios was offered a position as Unit Manager, but instead chose to begin her employment on a P.R.N., or as needed, basis, as she needed the flexibility at the time.

13. After eight months of working P.R.N., Michelle Deegan, the Director of Nursing for CCNC, offered Ms. Rios the position of Desk Nurse in the "Rapid Recovery Unit," because she felt Ms. Rios was both "reliable and organized."

14. Starting in February 2016, Ms. Rios worked four ten hour shifts per week as the desk nurse on the Rapid Recovery Unit, where she built relationships with the residents and their families, as well as their physicians and other caretakers.

15. From the date of her hire through August of 2016, Ms. Rios performed her job without complaint or reprimand.

16. She never received any disciplinary counselling, and her performance was praised by the facility administrator and her unit manager. In addition, Ms. Rios regularly acted as a mentor for new members of CCNC's staff.

17. Sometime in or around August of 2016, Ms. Deegan became aware that Ms. Rios was expecting a child.

18. After Ms. Deegan and other CCNC staff became aware of Ms. Rios' pregnancy she was repeatedly questioned by multiple members of CCNC staff regarding her plans and schedule leading up to the birth of her child.

19. Ms. Rios repeatedly informed CCNC that she wished to remain full time until the birth of her child.

20. Despite having no complaints about Ms. Rios' job performance, Ms. Deegan and other members of the CCNC staff pressured her to reduce her hours and move, once again, to a P.R.N. schedule.

21. On October 5, 2016, Ms. Deegan informed Ms. Rios that she had unilaterally removed Ms. Rios from her position as a desk nurse in the Rapid Recovery Unit and no longer agreed to abide by Ms. Rios' regular schedule.

22. Instead, Ms. Deegan notified Ms. Rios that her schedule would change completely, from four ten hour shifts per week to five eight hour shifts per week.

23. Ms. Deegan further stated that this change in Ms. Rios' position and schedule were a direct result of her pregnancy.

24. On information and belief, Ms. Rios was the only member of the CCNC nursing staff that was changed to a completely different position and schedule in October of 2016, despite her repeated requests to remain a full time employee and to remain in the position for which she had been hired.

25. The week following this conversation, Ms. Rios was only scheduled for twenty hours, and the next week she was only scheduled for eighteen hours, rather than her usual full time, forty hour per week schedule.

26. Following this change in her position and schedule and reduced hours, Ms. Rios contacted the facility administrator, stating that she believed she was being harassed and discriminated against because of her pregnancy.

27. The facility administration referred Ms. Rios to corporate compliance office, which she contacted shortly thereafter.

28. Following her complaint to CCNC's corporate compliance office, Ms. Rios was effectively suspended, and was not given any additional work hours from mid-October 2016- early November 2016 after her conversation with the facility administration and corporate compliance.

29. On or around November 8, 2016, the Director of Field Human Resources for Defendant reinstated Ms. Rios and provided back pay, and she returned to her full-time employment on the Rapid Recovery Unit, where she originally worked.

30. After she returned to work, Ms. Rios was subjected to a pattern of intimidation and harassment, which manifested as disproportionate criticism, micromanagement of patient encounters, and routine questioning of Ms. Rios' co-workers regarding her work performance.

31. On or around November 14, 2016, when she arrived to work, the CNA on duty informed Ms. Rios that he was having trouble getting a reading of a resident's oxygen saturation levels.

32. Shortly thereafter, Ms. Rios assessed the resident, and found that her oxygen saturation was low, but that the resident was responsive.

33. Over the course of the day, Ms. Rios monitored the resident's condition nearly hourly, contacted and remained in regular communication with the resident's physician, and followed the orders of the nurse practitioner that assessed the resident.

34. No one involved with the care of this resident complained to Ms. Deegan, or any other member of the CCNC staff, that Ms. Rios had failed to appropriately respond to the change in the resident's condition.

35. However, for some unknown reason, Ms. Deegan launched a full "investigation" into Ms. Rios' treatment of the resident on November 14, 2016.

36. After a week of interviewing everyone that Ms. Rios had any contact with on November 14, 2016, Ms. Deegan determined Ms. Rios had "failed to follow facility protocol."

37. Ms. Rios was issued a "final written warning," despite never having been disciplined before, which alleged that she violated "Rule #59 Standard of Care."

38. Ms. Rios asked for a copy of Rule #59, but it was never provided by Ms. Deegan or any other person at CCNC.

39. On or around November 28, 2016, nursing students from Concord College were present at CCNC with their supervisor to perform their clinical hours.

40. Students from Concord College were usually at CCNC 2-3 days per week and are only permitted to perform treatments under the supervision of their instructor, and are only allowed to assist and observe other nurses at the facility.

41. Ms. Rios was not responsible for supervising nursing students or ensuring that their instructor was properly supervising them at any time during her employment and was repeatedly assured by the nursing instructor that he would be actively supervising all of the nursing students while on site.

42. That afternoon, two nursing students agreed to perform a shower for a CNA that was on duty at the time.

43. At no time did the CNA or the nursing students inform Ms. Rios that the students were not being supervised by their instructor.

44. This particular resident was recovering from surgery and had a dressing over the surgical incision that required a dressing change.

45. Without the supervision of another nurse or their instructor, the nursing students removed the old dressing and proceeded to assist the resident with her shower.

46. While the students were assisting the resident with her shower, they sent the on duty CNA to ask Ms. Rios what kind of dressing to use over the resident's surgical incision after the shower.

47. Ms. Rios was in the doctor's lounge for her lunch period at the time, and based on the questions she was asked by the CNA, told him that the incision should be wrapped with a bandage, and provided him with the keys to the treatment cart.

48. At no time did the CNA inform Ms. Rios that the nursing students were not being properly supervised.

49. After completing the shower, the nursing students reported to Ms. Rios that they had completed all of the treatments in the treatment book.

50. Ms. Rios, in accordance with the standard operating procedure of all staff at CCNC regarding the onsite nursing students, signed off on the treatments as completed.

51. In reality, the unsupervised nursing students had lied to Ms. Rios about completing one treatment, and had performed the dressing change incorrectly, all while unsupervised.

52. As a result, Ms. Deegan and CCNC once again launched a full investigation into Ms. Rios' actions.

53. Rather than hold the nursing students, the CNA, or the nursing instructor, who repeatedly assured Ms. Rios that he would be supervising his students, responsible for their actions, CCNC blamed Ms. Rios.

54. As a result, CCNC fired Ms. Rios and reported her to the nursing board for "falsifying medical records."

## FIRST CLAIM FOR RELIEF
### Violation of the Civil Rights Act of 1964, Gender Discrimination

55. Plaintiff incorporates the preceding paragraphs, 1-54, as if realleged.

56. At all relevant times, Plaintiff Yolanda Rios was a member of a protected class as a pregnant female.

57. Plaintiff was subjected to disparate treatment, as described above, and ultimately terminated by Defendant CCNC because of her gender and pregnancy, in violation of Title VII of the Civil Rights Act of 1964.

58. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of income, wages, and other benefits of employment, and experienced mental and emotional pain and suffering.

59. Defendant is therefore liable to Plaintiff for all economic and non-economic damages incurred by Plaintiff as a result of Defendant's discriminatory actions, according to proof.

## SECOND CLAIM FOR RELIEF
### Retaliation in Violation of the Civil Rights Act of 1964
### 42 U.S.C.A. §2000e-3

60. Plaintiff incorporates the preceding paragraphs, 1-59, as if realleged.

61. On or around October 21, 2016, Plaintiff Yolanda Rios submitted a letter to the facility administrator for Defendant CCNC stating that she believed she was being discriminated against with regard to her job assignment as a result of her pregnancy.

62. Sending this letter to facility administration constitutes a protected activity under 42 U.S.C.A. §2000e-3(a).

63. When Ms. Rios returned to work following her complaint to CCNC administration, she was subjected to increased scrutiny, micromanagement, unnecessary "investigations," and was ultimately terminated from her position with Defendant CCNC.

64. Defendant CCNC's termination of Plaintiff's employment was a pretext used in order to cover its true motive to retaliate against Plaintiff for having engaged in a protected activity.

65. As a result of Defendant's retaliatory actions, Plaintiff has suffered a loss of income, wages, and other benefits of employment, and experienced mental and emotional pain and suffering.

66. Defendant is therefore liable to Plaintiff for all economic and non-economic damages incurred by Plaintiff as a result of Defendant's retaliatory actions, according to proof.

## THIRD CLAIM FOR RELIEF
### Violation of C.R.S. §24-34-402.3 - Pregnancy Discrimination

67. Plaintiff incorporates the preceding paragraphs, 1-67 as if realleged.

68. In or around August 2016, Defendant CCNC, became aware that Ms. Rios was expecting a child.

69. Despite Ms. Rios making it clear to employees responsible for scheduling and the Director of Nursing that she wished to remain full time until the birth of her child, Ms. Rios was forced to reduce her hours and was only permitted to work in certain areas as a direct result of her pregnancy.

70. Ms. Rios never requested an accommodation, and never requested a change to her work environment.

71. Pursuant to C.R.S. §24-34-402(3)(1)(a)(IV), an employer may not force a pregnant employee to take an accommodation that was not requested or necessary.

72. The change in Ms. Rios' work schedule and environment were neither requested nor necessary accommodations.

73. As such, Defendant is liable to Plaintiff for all economic and non-economic damages caused by Defendant's forced accommodations, according to proof.

## **FOURTH CLAIM FOR RELIEF**
### **Discrimination in Violation of C.R.S. §24-34-402 – Gender Discrimination**

74. Plaintiff incorporates the preceding paragraphs, 1-74, as if realleged.

75. At all relevant times, Plaintiff Yolanda Rios was a member of a protected class as a pregnant female.

76. Plaintiff was subjected to disparate treatment, as described above, and ultimately terminated by Defendant CCNC because of her gender and pregnancy, in violation of C.R.S. §24-34-402(a).

77. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of income, wages, and other benefits of employment, and experienced mental and emotional pain and suffering.

78. Defendant is therefore liable to Plaintiff for all economic and non-economic damages incurred by Plaintiff as a result of Defendant's discriminatory actions, according to proof.

Based on the foregoing, Plaintiff respectfully requests that the Court enter judgment against the Defendant for all economic damages, including lost income, wages, and other benefits of employment, back pay, compensatory damages, attorneys fees, costs associated with this action, and any other relief this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

DATED: December 18, 2017

                                                Respectfully Submitted,

                                                */s/ Alexandra Bellanti*
                                                Alexandra M. Bellanti, #47910
                                                R. Bret Beattie, #39805
                                                The Bret Beattie Law Firm, LLC
                                                7200 S. Alton Way, Suite A-120
                                                Centennial, CO 80112
                                                Phone: 720-708-3275
                                                Fax: 720-708-3268
                                                Email: abellanti@bretbeattielawfirm.com,
                                                bret@bretbeattielawfirm.com
                                                ATTORNEYS FOR PLAINTIFF