IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 17-cv-03062-MSK-NYW

YOLANDA RIOS,

    Plaintiff,

v.

NEXION HEALTH AT CHERRY CREEK,

    Defendant.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Nexion") Motion for Summary Judgment **(# 33)**, Ms. Rios' response **(# 36)**, and Nexion's reply **(# 40)**.

## FACTS

The Court summarizes the pertinent facts here and elaborates as necessary as part of its analysis.

In June 2015, Ms. Rios was hired to work as a Registered Nurse at Nexion, a nursing home. Her supervisor was Michelle Deegan. Ms. Rios initially worked on a flexible PRN (*i.e.* "as needed") schedule, but Ms. Deegan asked if she would consider moving to a full-time position as a Desk Nurse in the Rapid Recovery Unit. Ms. Rios agreed and began working a full-time schedule of three, twelve-hour shifts per week. The Desk Nurse job was later reconfigured slightly, and Ms. Rios was then assigned to four ten-hour shifts per week.

1

In or about May 2016, Ms. Rios learned that she was pregnant. In August or September 2016, she contacted Nexion's Human Resources Department to inquire about maternity leave options.

In October 2016, Nexion decided that low patient counts in the Rapid Recovery Unit did not justify the need for a Desk Nurse position and that position was eliminated. Ms. Deegan informed Ms. Rios that she was being transferred to work as a Cart Nurse in another unit, and that her schedule would change to five eight-hour shifts per week. Ms. Rios preferred working in the Rapid Recovery Unit because of its slightly faster pace of work and asked if she could stay there in the Cart Nurse position (which remained), but Ms. Deegan stated that she wanted Ms. Rios to work on a unit that still had a Desk Nurse who could cover "in case [Ms. Rios] had to call off because of [her] pregnancy." Ms. Deegan also mentioned to Ms. Rios that, when she returned from any maternity leave, she would probably want to return to the PRN schedule to minimize childcare needs and that her new unit assignment would make it easier for her to work a PRN schedule.

A few weeks later, Ms. Rios sent a written complaint to Nexion's Administrator, contending that her reassignment from a full-time schedule to a PRN schedule[1] constituted discrimination against her because of her pregnancy. The letter made a number of additional allegations, including: (i) that Ms. Rios had been told by a co-worker that Ms. Deegan was "freaking out about you being pregnant and who we are going to replace you with"; (ii) that the Desk Nurse position in the Rapid Recovery Unit had not actually been discontinued and that there was still a Desk Nurse there working the same shift Ms. Rios had been on; (iii) in the

---

[1] It is not clear from the record whether Ms. Rios was actually placed on a PRN schedule at this point in time, although, as noted below, she experienced a diminishment in her scheduled hours for several weeks after her discussion with Ms. Deegan.

weeks following her reassignment, she had been "flexed" into other schedules that resulted in her working only 15-20 hours per week instead of full-time; and (iv) that Ms. Deegan had previously bragged to Ms. Rios about having switched certain employees' hours and assignments for the purpose of getting the employees to quit.

Nexion investigated Ms. Rios' complaint and determined that there was no basis to believe that Ms. Rios had been discriminated against because of her pregnancy, but Nexion agreed to repay Ms. Rios for certain hours that she had missed and to reassign her to the Cart Nurse position in the Rapid Recovery Unit, returning her to the 12-hour shifts she preferred.

On November 14, 2016, Ms. Rios was involved in an incident in which a staff member reported having difficulty taking a patient's oxygen reading. According to Nexion, Ms. Rios did not react promptly, waiting three hours before checking on the patient's condition and, although the reading showed that the patient's oxygen level was dangerously low, Ms. Rios waited another three hours before summoning the treating physician. Ms. Rios disputes these facts, contending that she responded to the patient immediately, was able to take an oxygen reading within 15-20 minutes thereafter, increased the patient's oxygen delivery, and immediately notified the treating physician when the patient's oxygen level had stabilized. It is undisputed that the patient was transferred to the hospital for further care due to her decreased oxygen levels. On November 21, 2018, Nexion issued Ms. Rios a "Final Written Warning" based on this event, charging her with failure to follow facility protocols.

On November 28, 2018, Ms. Rios was involved in another incident involving nursing students were training at Nexion. The precise contours of this event are somewhat unclear in the record, but it appears that the supervising instructor and some students were in one location administering flu shots while a second group of nursing students were assisting a patient in Ms.

Rios' unit with showering. At some point, the students assisting with the shower had a question about whether or how to change one of the patient's dressings and conveyed that question to Ms. Rios, who was in the doctor's lounge having lunch. Rather than get up to address the situation, Ms. Rios conveyed an answer back to the students through a nursing assistant. The students had additional questions and again, rather than tending to the situation personally, Ms. Rios simply conveyed instructions back to the students through the assistant. Ultimately, the students changed the dressing incorrectly. There is also some indication that Ms. Rios signed a treatment record stating that a dressing on another patient had been changed by nursing students when the dressing had not been changed.

Ms. Rios does not dispute most of the facts discussed above (although she states that she only recalls being asked one question by the nursing students ---- where to locate certain supplies and she directed him to the treatment cart). But Ms. Rios contends that she had no responsibility for the nursing students because the nursing students' supervisor was responsible for all of their activities. When the students' supervisor reported to Ms. Rios that the students had completed all of the necessary treatments, she "took his word on it" because he is a fellow nurse and it is typical for nurses to rely on nurse-to-nurse communications when signing off on the treatment records.

Ms. Rios was suspended pending an investigation into these incidents. The investigation was performed by Donna Boudreax, a nurse employed by Nexion. Ms. Boudreax concluded that Ms. Rios had falsified documentation and that the proper punishment for that offense was termination. On December 14, 2016, Nexion terminated Ms. Rios' employment.

Ms. Rios commenced this action, asserting four claims for relief: (i) sex/pregnancy discrimination in violation of Title VII of the Civil Rights Act; (ii) retaliation in violation of Title

VII; (iii) pregnancy discrimination in violation of C.R.S. § 24-34-402.3, relating to the forced adjustment of her schedule in or about October 2016; and (iv) a hybrid claim for sex and pregnancy discrimination in violation of C.R.S. § 24-34-402, relating to her termination.

Nexion moves **(# 33)** for summary judgment on Ms. Rios' claims, arguing: (i) Ms. Rios cannot establish a *prima facie* case of discrimination because she was not satisfactorily performing her job and because there are no circumstances indicating that she was treated less favorably than non-pregnant individuals who committed similar misconduct; (ii) Ms. Rios cannot show that Nexion's reasons for her termination are pretext for pregnancy discrimination; (iii) Ms. Rios cannot establish a *prima facie* case of retaliation because she cannot show a causal connection between her complaint of discrimination and her termination; and (iv) Ms. Rios cannot show that Nexion's reasons for her termination are pretext for retaliation.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Discrimination claims**

Ms. Rios' claims for sex and pregnancy discrimination under state and federal law are subject to the same analysis. *See Williams v. Department of Public Safety*, 369 P.3d 760, 771 & n. 2 (Colo.App. 2015). Ms. Rios must first come forward with sufficient evidence to

demonstrate a *prima facie* case of discrimination showing: (i) that she was a member of the appropriate protected class – that is, that she was pregnant; (ii) that she possessed the minimum objective qualifications for her position; (iii) that she suffered an adverse employment action; and (iv) that the adverse action occurred in circumstances giving rise to an inference of pregnancy discrimination. If Ms. Rios carries that burden, Nexion then may come forward with evidence of a legitimate, non-discriminatory reason for the adverse action. If it does so, Ms. Rios bears the ultimate burden of proving that Nexion's proffered reason is a pretext for discrimination. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005), *citing EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000).

There is no dispute that Ms. Rios was pregnant, satisfying the first element of her burden of proof. Nexion argues that Ms. Rios cannot establish the second element, because her poor performance rendered her unqualified for her position. The 10th Circuit has made clear that, at the *prima facie* case stage, the inquiry is only whether Ms. Rios satisfied the minimal objective criteria necessary for her position, not an inquiry as to whether her performance met Nexion's subjective standards. *Horizon*, 220 F.3d at 1193. Here, it is clear that Ms. Rios met the minimum objective qualifications for being a Desk Nurse or Cart Nurse – *i.e.* that she possessed a nursing license – and thus, she satisfies this element of the *prima facie* case.

Next, the Court considers whether Ms. Rios was subjected to an adverse employment action. For purposes of addressing this issue, the Court will split the remainder of its analysis between Ms. Rios' schedule adjustments in October 2016 and her discipline and termination in November 2016.

1. <u>Schedule adjustments</u>

An adverse employment action is one that "involve[s] a significant change in employment states," including "reassignment with significantly different responsibilities." *Lucas v. Office of Colorado State Public Defender*, 705 Fed.Appx. 700, 704 (10th Cir. 2017). Generally speaking, changes to an employee's shift or schedule that impose "a mere inconvenience," but which do not materially alter the employees job title, responsibilities, or pay will not amount to an adverse employment action. *See Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998) (teacher's assignment to different school, increasing her commute time but not changing her duties was "mere inconvenience," not an adverse action); *see also Brown v. Georgetown Univ.*, 828 F.Supp.2d 1, 8 (D.D.C. 2011) *and cases cited therein*.

Here, Ms. Rios' reassignment from Desk Nurse in the Rapid Recovery Unit to a Cart Nurse position in a different work unit did not materially alter her pay or job duties. At most, the record reflects that Ms. Rios preferred the Rapid Recovery Unit because the work was slightly faster paced, but the Court does not understand her to contend that the reassignment fundamentally changed the nature of her work. Thus, the Court finds that Ms. Rios has failed to show that her schedule change constituted a materially-adverse employment action.

Even assuming it did, the Court cannot conclude that Ms. Rios has shown that the change occurred in circumstances giving rise to an inference of discrimination. Admittedly, there is evidence that Ms. Deegan specifically based her decision to reassign Ms. Rios on Ms. Rios' pregnancy. If the story ended at this point, the Court would find that Ms. Rios had demonstrated a *prima facie* case of pregnancy discrimination. But the story does not end there.

Ms. Rios complained about the change (and about an apparent reduction in hours that briefly flowed from it) to Nexion management, and after investigating, Nexion management

reversed Ms. Deegan's decision, reinstating Ms. Rios' assignment to the Rapid Recovery Unit and her preferred schedule and repaying her for any hours that she missed in the interim. To the extent that Ms. Deegan's reassignment decision was tainted with animus against pregnancy, Nexion cured that discrimination by overruling that decision and making Ms. Rios whole.[2] Accordingly, Ms. Rios has not established a *prima facie* case of discrimination relating to her reassignment.

### 2. Discipline and termination

There is no dispute that Ms. Rios' termination constituted a materially-adverse employment action.[3] For purposes of expediency, the Court will further assume (although it has doubts) that Ms. Rios could also establish that the termination took place in circumstances leading to an inference of pregnancy discrimination. Thus, the burden shifts to Nexion to offer a legitimate justification for Ms. Rios' termination, and Nexion has done so, explaining that Ms.

---

[2]  As with any situation in which an employer overrules the discriminatory decision of a supervisor, the overruled decision itself may no longer support a claim for discrimination but the court may assume that the supervisor's animus tainted subsequent decisions in which that supervisor was involved. Here, it may be appropriate to assume that Ms. Deegan's discriminatory animus towards pregnant employees continued after Nexion overruled her reassignment of Ms. Rios. But as discussed herein, the record does not reflect that Ms. Deegan was personally involved in the subsequent events, making any anti-pregnancy animus she harbored irrelevant.

[3]  It is less clear whether Ms. Rios' Final Written Warning for the November 21 incident would constitute a separately-actionable adverse employment action. Typically, disciplinary warnings are not materially-adverse actions because they do not directly affect an employee's job status or benefits. *Haynes v. Level 3 Communications, Inc.*, 456 F.3d 1215, 1224-25 (10th Cir. 2006). Arguably, if the warning made it more likely that she would be terminated for a future infraction, the warning <u>could</u> be considered an adverse action. *Id.*, *citing Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998). But Ms. Rios does not argue that the warning had such an effect and, as discussed herein, it does not appear that Nexion's decision to terminate her was influenced by the existence of the warning. In any event, even if the Court were to treat the warning as a separately-actionable adverse employment action, that warning would not support a claim of discrimination for the same reasons discussed below.

Rios was terminated for falsifying records. The question, then, is whether Ms. Rios can show that Nexion's explanation is pretextual.

An employee attempting to show pretext may point to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason, sufficient to demonstrate that the stated reason is unworthy of credence. An employee might also attempt to show that the employer violated its own written policies or unwritten practices when making the decision. *DePaula v. Easter Seals El Mirador,* 859 F.3d 957, 970 (10th Cir. 2017). But it is essential to recognize that anti-discrimination laws are not a guarantee that every decision made by an employer will be wise or correct. Employers routinely make decisions that are mistaken or are based on poor judgment or even a mistaken understanding of the facts, even without discriminatory considerations factoring into the mix. Thus, the Court's inquiry is not whether Nexion correctly assessed the situation, but whether Nexion's decisionmakers <u>subjectively</u> held an honest belief in the reasons they gave for Ms. Rios' discipline and whether they acted in good faith upon those beliefs. *Id.* at 970-71.

Ms. Rios has not come forward with evidence that calls into doubt the honesty of the beliefs of any decisionmaker at Nexion with regard to the two incidents giving rise to her termination. Ms. Rios does not materially dispute that on November 28, nursing students engaged in two acts of improper treatment of Nexion patients and that Ms. Rios signed off on treatment records attesting that the patients were treated properly. Although Ms. Rios believes that the students' supervisor should bear responsibility for those errors, Nexion apparently disagrees and believes that Ms. Rios, as the Nexion employee in charge of the unit, was responsible. Similarly, although Ms. Rios believes that she should be allowed to rely upon the representations made by the students' supervisor that all treatments were completed correctly,

10

Nexion holds a different belief. The fact that the parties disagree on these matters is irrelevant, as Ms. Rios' subjective evaluation of the situation is not the correct lens through which the Court reviews the evidence. *DePaula,* 859 F.3d at 971. The question is not whether Ms. Rios believes Nexion made a bad decision, nor even whether the Court believes that it did. The question is whether there is any evidence that suggests that Nexion used these incidents as a pretextual substitute for firing Ms. Rios due to her pregnancy. For example, if Ms. Rios had come forward with evidence that Nexion had not held other staff members responsible actions of student nurses, or where the staff member relied upon representations of a supervisor, Ms. Rios might have been able to show that Nexion's stated reason for <u>her</u> termination was pretextual. But she has not.

Nexion has stated that it considers Ms. Rios' conduct to amount to falsification of records and that it routinely terminates any employee who is found to have falsified records. It has also come forward with considerable evidence that it had terminated employees for that offense many times in the past. Ms. Rios purports to identify several instances in which Nexion employees charged with falsification were only suspended, not terminated, but the records she relies upon reflect employees being suspended <u>pending investigation</u>. In each instance cited by Ms. Rios, the affected employee is recorded as having been terminated by Nexion shortly thereafter. Moreover, Ms. Rios has not come forward with any evidence that individuals who engaged in conduct like her own – relying on student supervisors' assurances to approve treatment records despite improper care having been provided – were not similarly charged by Nexion with falsification of records.

Ms. Rios contends that Ms. Deegan's previous discriminatory intent towards her pregnancy is a factor that bears upon the pretext analysis. But it is undisputed that Ms. Deegan

11

was not involved with investigating the incident or deciding what discipline to impose. Ms. Rios has not come forward with any evidence that suggests that Ms. Boudreax, apparently the decisionmaker with regard to the termination, harbored any anti-pregnancy animus or her own. Nor is Ms. Rios' contention that Ms. Deegan manifested her animus by subjecting Ms. Rios to closer scrutiny availing. Once again, Ms. Rios does not fundamentally dispute that the incidents of November 28 occurred as stated by Nexion, nor is there any evidence that Ms. Deegan caused or influenced those events in any way.

Accordingly, Ms. Rios has not demonstrated a triable issue of fact as to whether her discipline was the result of pregnancy discrimination by Nexion, and Nexion is entitled to summary judgment on her claims to that effect.

**C. Retaliation**

Finally, the Court turns to Ms. Rios' claim that she was retaliated against for complaining about pregnancy discrimination. To establish a *prima facie* case of retaliation, Ms. Rios must first show: (i) that she engaged in conduct protected by Title VII; (ii) that she suffered an adverse employment action thereafter; and (iii) that there is a causal connection between her protected conduct and the adverse action. If Ms. Rios carries that burden, Nexion must articulate a legitimate, non-retaliatory reason for the adverse action and Ms. Rios must ultimately show that Nexion's proffered reason is a pretext for retaliation. *Laul v. Los Alamos Natl. Laboratories,* 765 Fed.Appx. 434, 440 (10th Cir. 2019).

Ms. Rios has established a *prima facie* case of retaliation, in that her discipline and termination followed within a few weeks of her complaint to HR about pregnancy discrimination. *Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019) (close temporal proximity between protected conduct and adverse action alone can give rise to an inference of

retaliation). But for the same reasons discussed above, Ms. Rios has not come forward with evidence that demonstrated that Nexion's proffered reason for that discipline is pretextual, and temporal proximity alone cannot fill that void. *Bailey v. American Phoenix, Inc.*, 735 Fed.Appx. 524, 528 (10th Cir. 2018). Accordingly, Nexion is entitled to summary judgment on Ms. Rios' retaliation claims as well.

## CONCLUSION

For the foregoing reasons, Nexion's Motion for Summary Judgment **(# 33)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of Nexion on all of Ms. Rios' claims and close this case.

Dated this 21st day of August, 2019.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge